

**ORDERED in the Southern District of Florida on July 28, 2014.**

Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ASIC BROWARD LLC, | ) | Case No: 14-24273-RBR |
| | ) | |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

**SECOND INTERIM ORDER (I) AUTHORIZING (A) USE OF CASH COLLATERAL;
(B)    SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS
PURSUANT TO 11 U.S.C. § 364, AND (C) GRANT OF ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364 AND (II)
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)**

**THIS CAUSE** came before the Court on July 25, 2014 at 9:30 a.m. in Fort Lauderdale,

Florida for preliminary hearing (the "**Preliminary** Hearing") upon the *Debtor's Emergency*

*Motion for Entry of Interim Order (I) Authorizing (a) Use of Cash Collateral Pursuant to 11*

*U.S.C. § 363, (b) Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 AND*

*364(c) and (d), and (c) Granting of Security Interests, Superpriority Claims, and Adequate*

*Protection, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* [ECF No.

5] (the "**Motion**").  The Court having reviewed the Motion, having considered the evidence and

testimony proffered without objection and presented at the Preliminary Hearing and the representations of counsel for the Debtor (as defined below) and other parties in interest, and the Debtor and the Lender having stipulated, for purposes of this order, as follows:

## BACKGROUND

A.      On June 23, 2014 (the "**Petition Date**"), the Debtor commenced this case (the "**Chapter 11 Case**") by filing a voluntary petition for bankruptcy relief under Chapter 11 the Bankruptcy Code in this Court.

B.      The Debtor commenced the Chapter 11 Case to advance a reorganization or an orderly sale of substantially all of its assets.

C.      The Debtor is operating its business and managing its affairs as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

D.      No trustee, examiner or creditors' committee has been appointed in the Debtor's Chapter 11 case.

E.      The Debtor operates seven "Five Guys Burgers and Fries" restaurants situated in the State of Florida and is in the process of developing an eighth location that was planned to be open during the Summer of 2014.  The restaurants are located at:

- 5701 North University Drive, Tamarac FL  33321 ("**Tamarac**");

- 7266 West Atlantic Blvd., Margate, FL  33063 ("**Margate**");

- 1818 Cordova Road, Fort Lauderdale, FL  33316  ("**Harbour Shops**");

- 11097 Pines Blvd., Pembroke Pines, FL  333026 ("**Pembroke Pines**");

- 6201 North Andrews Avenue, Fort Lauderdale, FL   33309 ("**Cypress Creek**");

- 801 South University Drive, Plantation, FL  33324 ("**Plantation**");

- 800 East Hallandale Beach Blvd, Hallandale Beach, FL 33009 ("**Hallandale Beach**"); and

- New planned location in Hillsboro Square Shopping Center, Deerfield Beach, FL ("**Deerfield Beach**")

F.     The Debtor has been unable to obtain credit on its own.  Based on its financial performance, and limited asset base, the Debtor could not qualify for conventional financing alone.

G.     Prior to the commencement case, Mida Farms, LLC ("**Mida Farms**" or "**Lender**")[1] provided financial accommodation to permit it to obtain credit from Bank Leumi USA ("**Bank Leumi**").  The Debtor is a party (either as primary obligor and/or co-obligor) to several secured notes and loan agreements (the "**Bank Leumi Loans**") with Bank Leumi, which are now owned and held by Mida Farms. The Bank Leumi Loans made by Bank Leumi are evidenced by, *inter alia*: (i) the May 18, 2012 Credit Agreement between the Debtor and Mida Farms, as co-borrowers, and Bank Leumi, as lender; (ii) the April 26, 2013 Credit Agreement Amendment between the Debtor and Mida Farms, LLC, as co-borrowers, and Bank Leumi, as lender; (iii) the May 18, 2012 Loan Agreement between the Debtor and Mida Farms, LLC, as co-borrowers, and Bank Leumi, as lender; (iv) the May 28, 2012 Promissory Note; and the (v) the

---

[1] Franfunding owns 50% of the equity interest in the Debtor.  Asic Management, LLC owns 40% of Franfunding. Arital,96, LLC owns 25% of Asic Management,LLC.  Arital 96, LLC is controlled by Isaac Arguetty.  Mr. Arguetty controls 10% of Mida Farms.

May 18, 2012 Security Agreement (the foregoing documents along with all related prepetition documents are "**Bank Leumi Pre-Petition Loan Documents**").

      H.      Pursuant to the Bank Leumi Pre-Petition Loan Documents, Bank Leumi made (a) a $1,200,000 term loan (the proceeds of which were used to retire pre-existing indebtedness and some working capital) and (b) an $800,000 revolving loan to the Debtor evidenced by two seperate advances each in the amount of $400,000.   The advances under the revolving loan were used for working capital and to finance some of the construction and build out of two of the restaurant locations operated by the Debtor.

      I.      The financial accommodations provided by Mida Farms to the Debtor are evidenced by, *inter* alia, a Loan Agreement dated May 18, 2012 between the Debtor, Franfunding Broward, LLC, a Florida limited liability company ("**Franfunding**") and Mida Farms (the "**Mida Farms Agreement**").   Frandfunding owns 50% of the equity in the Debtor. Pursuant to the Mida Farms Agreement, the Debtor acknowledged that (i) Mida Farms would provide financial accommodation to the Debtor as a co-maker under the Bank Leumi Pre-Petition Loan Documents, (ii) it would be liable to Mida Farms for amounts advanced by Bank Leumi to the Debtor, and (iii) it would pay Mida Farms (a)  a co-signing fee equal to 3% of the of the loan amount advanced by Bank Leumi and (b) interest on the advances at a rate not to exceed 12% per annum (of which the Debtor is liable for only 8.5%).

      J.      To secure the obligations under the Mida Farms Agreement, the Debtor granted Mida Farms a security interest in and upon substantially all of its property.

      K.      On June 9, 2014, Mida Farms acquired, by assignment, the Bank Leumi Pre-Petition Loan Documents.

L.      As of the Petition Date, pursuant to the Bank Leumi Pre-Petition Loan Documents and the Mida Farms Agreement, the Debtor owes Mida Farms $1,760,000 in principal, plus interest, costs and attorneys' fees.

M.      Mida Farms also provided working capital loans to the Debtor pursuant to the terms of the Loan Agreement dated October 27, 2013 between the Debtor, Franfunding and Mida Farms (the "**Working Capital Loan Agreement**").

N.      As of the Petition Date, pursuant to the Working Capital Loan Agreement the Debtor owes Mida Farms $410,000 in principal, plus interest.

O.      The Debtor and Mida Farms are also parties to (i) First Amended Revolving Demand Promissory Note dated May 27, 2014 in the amount of $200,000, and (ii) Security Agreement dated May 19, 2014 (together, the "**Revolving Loan Documents**").

P.      Pursuant to the Revolving Loan Documents, Mida Farms made several advances to the Debtor to finance the completion of construction of the retail locations owned by the Debtors and to provide working capital to the Debtor.

Q.      As of the Petition Date, the Debtor owes Mida Farms $200,000 in principal, plus interest, costs and attorneys' fees pursuant to the Revolving Loan Documents.

R.      On May 20, 2014, Mida Farms filed a UCC-1 with the Florida Secretary of State, record number 201401454109, thereby perfecting its security interest under the Working Capital Loan Documents and Revolving Loan Documents.   Mida Farms' liens securing the advances under the Working Capital Loan Documents and the Revolving Loan Documents are secured by liens on substantially all of the assets of the Debtor, which liens are junior and subordinate to (in order of priority) the liens of (i) Mida Farms' under the Bank Leumi Loan Documents, (ii) U.S.

Foods, Inc.; ("**U.S. Foods Lien**") and (iii) Stockbridge Palm Lakes Plaza, LLC ("**Stockbridge Lien**", which lien attaches solely to the contents of the premises at the Margate location).

  S.  Mida Farms owns and holds the Bank Leumi Pre-Petition Loan Documents, the Mida Farms Agreement, the Working Capital Loan Documents and the Revolving Loan Agreement (collectively, the "**Pre-Petition Secured Loan Documents**").

  T.  As of the Petition Date, and pursuant to the Pre-Petition Secured Loan Documents, the Debtor was justly indebted to Mida Farms in the amount $2,345,000, plus interest, costs and attorneys' fees (the "**Pre-Petition Secured Indebtedness**").

  U.  The Pre-Petition Secured Indebtedness is secured by validly perfected and duly enforceable liens in and upon substantially all of the Debtor's assets, including all accounts, machinery, equipment and inventory, and the proceeds thereof.

  V.  Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

  W.  In accordance with Bankurptcy Rule 6003, an immediate and critical need exists for the Debtor to use cash collateral and obtain post-petition financing in order to operate its businesses, to pay the costs of administration of the estate and to satisfy other working capital and operational needs.

  X.  The Debtor is unable to obtain financing (i) in the forms of unsecured credit or debt allowable under § 503(b)(1) of the Bankruptcy Code, as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code, or unsecured debt having the priority afforded by § 364(c)(l) of the Bankruptcy Code, or (ii) on terms more favorable than those offered by Mida

Farms under the Bank Leumi Pre-Petition Loan Documents as modified by this Interim Order and all other agreements, documents, notes or instruments delivered pursuant hereto or in connection herewith (collectively the "**Post-Petition Financing Documents**").

Y.      The terms of the interim financing as contained in the Post-Petition Financing Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

Z.      The Debtor has requested that, pursuant to the terms of the Post-Petition Financing Documents, Mida Farms make a loan to the Debtor (as defined below, the "**Post-Petition Obligations**"), to be used by the Debtor solely in accordance with the terms of this Interim Order.  The ability of the Debtor to continue its business, realize value from assets and consummate a restructuring by way of a confirmed chapter 11 plan or sale under Chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such financing.  Mida Farms is willing to make such loans and advances on a superpriority administrative expense basis, secured by a superpriority post-petition first lien on all of the Debtor's assets (excluding any claims the Debtor may have under chapter 5 of the Bankruptcy Code and the proceeds thereof) as more particularly described herein, pursuant to the terms and conditions of this Interim Order. Accordingly, the relief requested in the Motion, as amended, modified and supplemented by this Interim Order, is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets, and is in the best interests of the Debtor, the estate and its creditors.

AA.      Based on the record before the Court, the terms of the Post-Petition Financing Documents, pursuant to which the post-petition loans and advances will be made or provided to

the Debtor by Mida Farms, have been negotiated in "good faith," as that term is used in § 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, the estate and its creditors. Based on the record presented to the Court by the Debtor, it appears Lender and its counsel are entitled to a finding of "good faith" pursuant to § 364(e) of the Bankruptcy Code, and entitled to the full protection and benefits of the provisions of § 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision herein is vacated, reversed or modified, on appeal or otherwise.

BB.    It is in the best interests of the Debtor that it be allowed to finance operations under the terms and conditions set forth in this Interim Order.  The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate in accordance with Bankruptcy Rule 6003, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT

1.    The Debtor has provided proper and adequate notice of the Motion, the Preliminary Hearing and the potential entry of this Interim Order as required by Bankruptcy Rule 4001, 6003 and 11 U.S.C. §§ 102(1), 363,  and 364.

2.    The Motion is **GRANTED on an interim basis**.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby **OVERRULED** on their merits or, to the extent applicable, deferred until the hearing on the Final Order.  This Interim Order shall become effective immediately upon its entry and shall be valid and binding on all parties in interest.

3.      The Debtor is hereby authorized to borrow funds, incur debt, reimbursement obligations and other obligations, and perform its obligations in accordance with the terms and conditions of the Pre-Petition Loan Documents and this Interim Order.  Prior to the entry of the Final Order, the Debtor may agree to non-material, *de minimis* amendments, modifications, and supplements to the Post-Petition Financing Documents, without further order of this Court or notice to any party.  All obligations owed to Mida under or in connection with the Post-Petition Financing Documents, including, without limitation, loans, advances and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the Post-Petition Financing Documents, and all of Lender's costs and expenses related to the DIP Loan or to this chapter 11 case, out-of-pocket expenses and the fees and expenses of Lender's counsel, are collectively defined and referred to herein as the ("**Post-Petition Obligations**").

4.      Lender's financing under this Order will consist of <u>interim</u> financing in the maximum amount of $135,000 available upon the entry of this Order (the "**Interim Amount**") and up to $240,000 of financing (the "**DIP Loan**") (inclusive of the $135,000 Interim Amount) upon the entry of a final order approving the DIP Loan. The Debtor will use best efforts to use available cash prior to drawing on the DIP Loan. The Debtor, in consideration of the DIP Loan financing to be made available hereunder, effective upon entry of the Final Order, Debtor shall waive and release any and all causes of action, claims, defenses and setoff rights against Lender, and its respective agents, representatives, assigns and successors.

5.      Upon entry of this Order and subject to the Post-Petition Financing Documents and the funding of the Interim Amount, the Post-Petition Financing Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with

their terms.  No obligation, payment or transfer under this Interim Order or the other Post-Petition Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.      To secure the post-petition financing under the DIP Loan, Lender is granted a valid, continuing, enforceable and fully protected first priority senior lien and security interest (the "**DIP Loan Liens**") in accordance with §§ 364(c)(2) and 364(d)(1) of the Bankruptcy Code in all assets and property of the Debtor and its estate, whether real or personal, tangible or intangible, now owned or hereafter acquired or arising, and wherever located, and all proceeds of any of the foregoing, *but excluding* chapter 5 causes of action and claims and the proceeds thereof (the "**DIP Collateral**"); provided, however, that (a) the DIP Loan Liens shall be junior and subordinate to the Permitted Liens (as defined below), if any, and (b) for purposes of this Interim Order, the DIP Loan Liens shall not attach to the Franchise Agreements between Five Guys Enterprises, LLC (as Franchisor) and the Debtor (as Franchisee) or related intellectual property or general intangibles (collectively, the "**Franchise Rights**"), except as provided by the Franchise Agreements or applicable law.   Any dispute regarding the extent or validity of the DIP Loan Liens on the Franchise Rights shall be determined at the Final Hearing (as defined below).

7.      The Debtor will not sell, convey, lease, license, assign, transfer, or otherwise dispose of substantially all or any portion of its assets or properties (excluding ordinary course business transactions), including any disposition of property as part of a sale and leaseback transaction to or in favor of any person, absent an order of the Court, after notice and hearing, authorizing such disposition.  Subject to the Carve Out, proceeds of any sale shall be delivered to

Mida Farms to be applied by Mida Farms first to reduce the DIP Loan, and once the DIP Loan is repaid in full, to reduce the allowed amounts owed by the Debtor under the Pre-Petition Secured Loan Documents.

8.      As adequate protection of Lender's interests in the any prepetition collateral that secured the Loans prepetition (the "**Prepetition Collateral**"), pursuant to §§ 361, 363 and 552(b) of the Bankruptcy Code, the Lender is granted valid, binding, enforceable and perfected replacement liens (the "**Replacement Liens**") in the same property of the Debtor's estate as held by Lender prior to the Petition Date.  The Replacement Liens shall enjoy the same validity, priority and extent as the liens the Lender held on the Petition Date, with such Replacement Liens being subject to (x) existing liens and encumbrances that are valid, binding and enforceable and perfected liens existing in the Prepetition Collateral on the Petition Date, including, without limitation, the Stockbridge Lien and the U.S. Foods Lien (the "**Permitted Liens**") and (y) the DIP Loan Liens.

9.      Notwithstanding any language in this Interim Order to the contrary, the DIP Loan Liens and Replacement Liens shall be fully subordinate to (a) allowed professional fees of the Debtor and of any committee appointed pursuant to § 1102 of the Bankruptcy Code, in an amount not exceed $50,000 in the aggregate for all professional fees and expenses of all the estate professionals, (b) the fees of the United States Trustee arising under 28 U.S.C. § 1930, (c) fees due to the Clerk of the Court; and (d) up to $25,000 in the aggregate for the fees and costs of any subsequently appointed trustee in this  case, and any professional of the trustee (collectively, the "**Carve-Out**").  The Carve-Out is an addition to the amounts allocated for professional fees and expenses in the Budget. The Carve-Out is approved for purposes of this Interim Order only,

subject to the rights of parties in interest to object to the sufficiency of the Carve Out at the Final Hearing.

10.     Subject to the entry of the Final Order, as a further condition of the DIP Loan and any obligation of the Lender to make any credit extensions pursuant to the DIP Loan, but for the Carve-Out, no expenses of administration incurred in the Case shall be charged against or recovered from the DIP Collateral or the Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the Lender, and nothing in this Order shall be deemed to constitute consent by the Lender to any charge, lien, assessment, or claim against, or recovery from, the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise on account of any expenses of administration incurred in the Case, nor shall any such consent be implied from any action, inaction or acquiescence by the Lender

11.     Subject to the provisions of paragraph 31 below, the DIP Loan Liens, Replacement Liens, and Post-Petition Obligations shall not be subject to any defenses, reductions, or setoffs asserted by the Debtor or any other party in the Debtor's chapter 11 case, including a Trustee or any committee that may be appointed in the future, whether directly or derivatively, including without limitation, any such defenses, reductions or setoffs associated in any way with claims against Lender, its affiliates, or predecessors.

12.     In connection with this Post-Petition Financing, the Debtor further acknowledges, represents, stipulates and agrees, among other things, that until the full repayment of the DIP Loan, but for the Permitted Liens, the Debtor shall not permit to exist any lien against the Debtor of any kind or nature whatsoever that has a priority equal or superior to the priority of the liens granted to Lender under this Interim Order.

13.     Notwithstanding anything to the contrary in the Post-Petition Financing Documents, the Debtor will use the proceeds of the DIP Loan to fund operations and pay expenses incurred during the administration of the Debtor's chapter 11 case solely in accordance with and as set forth in the budget, attached hereto as "Exhibit A" (as may be amended in accordance with the terms of this Order, the "**Budget**") during the period from the date hereof through the Final Hearing (the "**Specified Period**").  The Budget and any modifications to, or extensions, amendments or updates thereof, shall be (i) in form and substance acceptable to and approved in writing by Lender, and (ii) provided to counsel for Lender by email on not less than five (5) business days' advance notice at jguso@bergersingerman.com. Lender shall have the right to object to any such modifications, extensions, amendments or updates, including, without limitation, the filing of a pleading with the Court on shortened notice.  The Debtor shall be authorized to exceed the amounts set forth in the Budget by 10% of the disbursements projected for such month in the Budget, plus any unused portion of the disbursements projected for any prior month in the Budget.

14.     The Debtor shall use the advances made under or in connection with the Post-Petition Financing Documents solely as provided in the Post-Petition Financing Documents, as amended, modified and supplemented by this Interim Order, and in accordance with the Budget.

15.     Subject only to the Carve Out, all Post-Petition Obligations hereby constitute under § 364(c)(1) of the Bankruptcy Code allowed superpriority administrative expense claims against the Debtor having priority over all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise, whether incurred in these chapter 11 cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto

or thereto, which such superpriority administrative expense claim shall be payable from and have

recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof.

16.    The Debtor further acknowledges, represents, stipulates and agrees, among other

things, that until the full repayment of the DIP Loan, the Debtor shall not permit to exist any

administrative expense claim against the Debtor of any kind or nature whatsoever, that has a

priority that is equal or superior to the priority of the superpriority administrative expense claims

granted to Lender under this Interim Order.

17.    Notwithstanding any term in the Post-Petition Financing Documents to the

contrary, immediately upon the occurrence and during the continuation of an Event of Default, as

described in paragraph 18 of this Interim Order, Lender may declare the DIP Loan to be

immediately due and payable in full (any such declaration, shall be referred to herein as a

"**Termination Declaration**").  The Termination Declaration shall be given by email to each of

the following: (i) counsel to the Debtor, Jeffrey S. Grasl at jgrasl@mcdonaldhopkins.com; (ii)

the U.S. Trustee; and (iii) counsel to Minaxi Amin, Kaushik Amin, Bharti Roy, Joshana Patel,

and Chandrika Patel (collectively, the "**Patel Member Group**"), Joel L. Tabas at

jtabas@tabasfreedman.com.

18.    Upon the occurrence of an Event of Default (a) the DIP Loan shall be

immediately due and payable without notice or demand and (b) the Lender shall be entitled to

seek the entry of an order terminating the automatic stay under § 362 of the Code on an

expedited basis and a hearing on notice to the Debtor, counsel to the Patel Member Group, and

the United States Trustee.  At any such stay relief hearing, the Lender shall be entitled to seek

complete relief from the automatic stay for cause, subject to any and all defenses, and the Debtor

conclusively agrees that the occurrence of an Event of Default shall constitute cause.  For

purposes of this Interim Order, an "Event of Default" shall include (i) conversion of this case to Chapter 7; (ii) dismissal of this case; (iii) the appointment of a Chapter 7 Trustee; (iv) the entry of an order modifying, annulling or terminating the automatic stay in favor of any other creditor asserting a lien against the Post-Petition Collateral; or, (v) the Debtor's failure to comply with the Budget or any of the term of this Interim Order.

19.    Notwithstanding anything in the Post-Petition Financing Documents to the contrary, the non-Default rate of interest shall be 8.5%, while the "Default Rate" applicable to all outstanding balances under the DIP Loan shall be 11.0% percent per annum. The 11.0% "Default Rate" shall apply from and after the occurrence of an Event of Default (as defined in paragraph 18 above).

20.    The indebtedness due hereunder shall mature on the earlier of (a) the occurrence of an Event of Default, (b) upon the sale of substantially all of the Debtor's assets in connection with or prior to the confirmation of a Chapter 11 plan of reorganization; (c) upon confirmation of a Chapter 11 plan of reorganization, even if the plan does not call for a sale of any of the Debtor's assets; or (d) September 30, 2014 (the "**Maturity Date**").  The Maturity Date may be extended by the mutual consent of the Lender and Debtor in writing without further order of the Court.  In the event that the Debtor sells any of its assets during the chapter 11 case, the Debtor shall, subject to the Carve Out, deliver the net proceeds of the Sale to the Lender to be applied by Lender as provided in this Interim Order.

21.    Notwithstanding anything herein or in the other Post-Petition Financing Documents, on the Maturity Date, the Debtor shall no longer, pursuant to this Interim Order, the other Post-Petition Financing Documents or otherwise, be authorized to borrow funds or incur

indebtedness hereunder or under the other Post-Petition Financing Documents or to use any proceeds of the Post-Petition Obligations already received, except by the consent of the Lender.

22.     Notwithstanding anything herein or the occurrence of the Maturity Date, all of the rights, remedies, benefits and protections provided to Lender under this Interim Order and the other Post-Petition Financing Documents shall survive such Maturity Date.  Upon such Maturity Date, the principal of and all other amounts due under the Post-Petition Financing Documents, shall be immediately due and payable and Lender shall have all other rights and remedies provided in this Interim Order, the other Post-Petition Financing Documents and applicable law.

23.     The failure or delay by Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order or any other Post-Petition Financing Documents shall not constitute a waiver of any of the rights of the Lender, and any single or partial exercise of such rights and remedies against the Debtor shall not be construed to limit any further exercise of such rights and remedies against the Debtor.

24.     Without limiting the rights of access and information afforded to Lender under the Post-Petition Financing Documents, the Debtor, upon reasonable written notice and at such reasonable times during normal business hours and as often as may reasonably be requested, shall permit any representatives designated by Lender to visit and inspect any of the assets or properties, to inspect, copy and take extracts from Debtor's financial and accounting records and to discuss its affairs, finances and accounts with its officers and independent public accountants and counsel.

25.     The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender, the Debtor, and their respective successors and assigns.

26.     Based on this Interim Order and in accordance with § 364(e) of the Bankruptcy Code, which is applicable to the interim amounts under the DIP Loan contemplated by this Interim Order, in the event that any or all of the provisions of this Interim Order or any other Post-Petition Financing Documents are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any claim authorized or created hereby or thereby or any Post-Petition Obligations incurred hereunder or thereunder.

27.     The Debtor is authorized and directed to the extent necessary under § 363 of the Bankruptcy Code, and the automatic stay imposed by § 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to do and perform all acts, to make, execute and deliver all required instruments and documents to Lender to effectuate the provisions of this Interim Order.

28.     The obligations of the Debtor in respect of the Post-Petition Obligations, and the claims to or for the benefit of Lender pursuant to this Interim Order and the other Post-Petition Financing Documents, shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in this Chapter 11 Case or (b) converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

29.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

30.     Promptly after the entry of this Interim Order, the Debtor shall serve on all interested parties copies of the Motion, this Interim Order and a notice of the hearing (the "**Final Hearing Notice**") to be held on **Friday, August 1, 2014 at 9:30 a.m.** to consider entry of the Final Order (the "**Final Hearing**").  All creditors and parties in interest shall have up to five (5)

days prior to the Final Hearing to file an objection, if any, to the continued authority of the Debtor to obtain funds in accordance with the terms of the Post-Petition Financing Documents, as amended, modified and supplemented by this Interim Order.  Objections must be in writing and shall be filed with this Court and served upon the attorneys for the Debtor: Jeffrey S. Grasl, 39533 Woodward Ave., Suite 318, Bloomfield Hills, MI 48025, counsel for the Lender: Jordi Guso, Berger Singerman, LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (jguso@bergersingerman.com), and counsel for the Patel Member Group, Joel L. Tabas at jtabas@tabasfreedman.com.

31.    All of the provisions of this Interim Order shall be final and binding on the Debtor.  An official committee of unsecured creditors (the "**Committee**"), or if no Committee is appointed any creditor, shall have until September 15, 2014, within which to file and to serve upon counsel for the Lender, objections or complaints respecting (a) the claims, causes of actions and defenses released by the Debtor pursuant to the Final Order, or (b) the validity, extent, priority, avoidability, or enforceability of the Pre-Petition Secured Indebtedness or the Lender's pre-petition liens on and pre-petition security interests in the Debtor's property.  The foregoing deadline may be extended by Order of the Court for good cause shown, or by agreement of the parties. The Debtor and Lender reserve the right to object to any request for an extension of the deadline.  In the event that no objections or complaints are filed with this Court and served upon counsel of record for the Lender within the time period set forth above, the provisions of this Order shall become final and binding on all such parties, including any subsequently appointed trustee.

32.    In the event that any provision of this Interim Order conflicts with any term of the other Post-Petition Financing Documents, this Interim Order shall govern.

33.     This Court has and will retain jurisdiction (i) to enforce this Interim Order according to its terms and (ii) to determine any disputes arising with respect to this Interim Order.

# # #

**Submitted by:**
Jayson B. Ruff
McDonald Hopkins LLC
39533 Woodward Ave., Ste. 318
Blomfield Hills, MI 48304
Tel:  (248) 646-5070
Fax: (248) 646-5075

## Cash Flow BUDGET from June 22 to Sep 30

|  | June 22 - July 12 | July 13 - August 31 | Sept 1 - Sept 28 |
|---|---|---|---|
| **Sales** | 366,000 | 934,000 | 552,000 |
| **Sales TAX** |  | (64,000) | (32,000) |
|  |  |  |  |
| **Net Sales** | 366,000 | 870,000 | 520,000 |
|  |  |  |  |
| **COGS** | (117,974) | (298,880) | (185,640) |
| **Rent** | (70,381) | (70,381) | (70,381) |
| **Labor** | (71,334) | (260,334) | (136,334) |
| **Five Guys** | (27,623) | (70,491) | (41,660) |
| **Other** | (35,145) | (75,145) | (45,145) |
|  |  |  |  |
| **Operational profit** | $   43,543 | 94,769 | 40,840 |
|  |  |  |  |
| **ASIC MGT** | (15,000) | (15,000) | (15,000) |
|  |  |  |  |
| **EBITDA** | 28,543 | 79,769 | 25,839 |
|  |  |  |  |
| **Constructions of store** | (80,000) | (130,000) |  |
|  |  |  |  |
| **Legal Fees** |  | (60,000) | (35,000) |
| **Prv period Saled Tax** | (32,467) |  |  |
| **Unexpected Reserve** | (30,000) |  |  |
| **US Trustee Fees** |  |  | (6,500) |
|  |  |  |  |
| **Net Cash Flow** | (113,924) | (110,231) | (15,661) |

Total

1,852,000
(96,000)

1,756,000

(602,494)   -0.33599
(211,144)   -0.12024
(468,002)   -0.25228
(139,774)   -0.07859
(155,435)   -0.08282

228,421   0.130081

(45,000)

158,419   0.090216

(95,000)
(32,467)
(30,000)
(6,500)

(239,816)